## L. A. RAGSDALE *v.* VICKSBURG AND MERIDIAN RAILROAD COMPANY.

1. DECREE. *Dismissal "without prejudice." Effect. Case in judgment.*

   A decree dismissing a bill in chancery " without prejudice as to any right or title which the complainant may hereafter assert, either in law or equity," to a certain tract of land in controversy in the suit, does not restrict the complainant to the privilege of relitigating any right or title thereafter to be acquired, but leaves him at liberty to assert in a new suit any right or title previously held or claimed. The effect of such decree is to adjudicate nothing as to the matter in question, and to leave it just as if there had never been any suit in respect thereto.

2. SAME. *Of supreme court. Modification thereof. Effect on previously delivered opinion.*

   Where this court, having delivered an opinion in a case and caused a decree to be entered in accordance therewith, at a subsequent time during the same term so modifies the decree as to make it partially inconsistent with the opinion, the latter must be considered as superseded by the former to the extent of such inconsistency.

3. GRANT OF LAND. *Alteration of condition. Non-performance. Waiver.*

   Where the condition upon which a grant of land is based has been altered by a verbal agreement subsequently made, but the grantee fails to comply with it, either as originally expressed or as altered, the grantor has the right to be re-invested with the title to the land, if it does not appear that he waived or dispensed with the condition of the grant.

APPEAL from the Chancery Court of Lauderdale County.

HON. T. B. GRAHAM, Chancellor.

On the 5th of March, 1858, L. A. Ragsdale conveyed to the Southern Railroad Company, whose road was then being constructed, twenty-two acres of land situated in the town of Meridian, with the condition subjoined that " It is expressly understood that the above conveyance is made for a location of the Southern Railroad at the crossing with the Mobile and Ohio Railroad, not differing at right angles from the location made by William Haupt more than one hundred and twenty-five feet."

Subsequently, in 1858 or 1859, a verbal agreement was made between Ragsdale and W. C. Smedes, president of the Southern

(now Vicksburg and Meridian) Railroad Company, to the effect that the railroad company should convey back to Ragsdale sixteen of the twenty-two acres of land which he had conveyed to the company, and that upon the remaining six acres, or contiguous thereto, a passenger depot should be built by the railroad company.

On the 20th of March, 1866, M. Emanuel, president of the Southern Railroad Company (and successor to Smedes), W. C. Hardee, president of the Selma and Meridian Railroad Company, and L. J. Fleming, general superintendent of the Mobile and Ohio Railroad Company, sent a written communication to Ragsdale, stating in substance that they had agreed to erect a joint passenger depot, at a place designated, upon land belonging to the Mobile and Ohio Railroad Company, provided that within ten days thereafter Ragsdale should convey to the Selma and Meridian Railroad Company a certain described piece of land and should make an " unconditional deed " to the Mobile and Ohio Railroad Company for five acres of land previously " donated to that company." Ragsdale accepted this proposition and performed the condition imposed upon him.

The Southern Railroad was completed to Meridian in the year 1861, but no passenger depot had been built or commenced by the Southern (or Vicksburg and Meridian) Railroad Company on or contiguous to the six acres of land mentioned in the agreement between Ragsdale and Smedes, and no steps had been taken to erect the joint passenger depot in pursuance of the agreement of the 20th of March, 1866, when, on the 8th of September, 1867, Ragsdale filed a bill in the Chancery Court of Hinds County against the Vicksburg and Meridian Railroad Company, alleging that the defendant had forfeited its right to the entire twenty-two acres of land conveyed to it by the complainant on the 5th of March, 1858, and asking that the deed therefor be cancelled and the complainant re-invested with the title thereto. The defendant opposed the relief sought in that bill on the ground that it had performed the condition upon which the grant of the twenty acres was based and its title to the land had become absolute. That case was brought to the supreme court on appeal, and this court held that

the railroad company, by the agreement made in 1858 or 1859 between Smedes and Ragsdale, had abandoned its claim to the sixteen acres of land which Smedes promised should be conveyed back to Ragsdale, and that though that agreement was obnoxious to the statute of frauds because not in writing, yet the defendant was estopped to deny such abandonment because "it stood by, year after year, and saw Ragsdale asserting ownership over said sixteen acres and his vendees erecting costly structures thereon and enjoying their several premises, yet never once protested that he was a usurper and his vendees were improving property not rightfully theirs." No part of the six acres had been sold off, improved, or occupied by Ragsdale. It was said in the opinion that, "for the very reasons which should preclude the defendant from holding title to sixteen of the twenty-two acres, the complainant should be denied relief as to the six acres." A decree was entered in this court in November, 1876, cancelling Ragsdale's deed as to the sixteen acres referred to, but dismissing the bill as to the six acres ; but upon a petition for re-argument, filed by Ragsdale's counsel, the court on the 8th of January, 1877, caused the decree to be modified so that the dismissal should be "without prejudice as to any right of [or] title which the said Ragsdale may hereafter assert, either in law or equity, to said six acres." That case is reported in 54 Miss. 200.

After the termination of that suit Ragsdale took formal possession of the six acres of land, and then the Vicksburg and Meridian Railroad Company brought an action of ejectment to recover the same. Thereupon he, on the 17th of June, 1882, filed the bill in this case, charging that the defendant had failed to perform the condition imposed by his deed of the 5th of March, 1858, as to the location of its railroad and the crossing with the Mobile and Ohio Railroad, that no passenger depot had been erected on or contiguous to the six acres, in pursuance of complainant's agreement with Smedes, and that the joint passenger depot which the defendant on the 20th of March, 1866, in connection with the two other railroad companies above mentioned, bound itself to construct had not been built, and asking that the defend-

ant be enjoined from prosecuting its action of ejectment, and that the complainant's deed conveying to the defendant the six acres of land in controversy be cancelled as being a cloud upon his title. The defendant's answer avers that the complainant waived the condition in his deed by the agreement with Smedes ; that this agreement would have been fulfilled by the defendant but for the intervention of the war, which crippled its resources and deprived it of the means for the erection of the depot promised, and that the failure to erect the joint passenger depot was the result of the complainant's "litigious disposition and opposition." The defendant also set up in its answer the adjudication in the former suit with the complainant as covering the subject-matter of this suit and as an estoppel to any further litigation in respect thereto.

Upon final hearing the bill herein was dismissed, and from the decree of dismissal the complainant appealed to this court.

*Woods & McIntosh*, for the appellant.

1. It is gravely contended in the answer to this bill that the whole matter involved in the present suit has been adjudicated by the decree of the supreme court in *Ragsdale* v. *V. & M. R. R. Co.*, 54 Miss. 200, and by the amended decree as to the six acres of land in controversy here.

The capital error into which the defendant's answer, as well as the argument of defendant's counsel, on this point falls consists in the singular confounding of the *reasoning* of Chief Justice Simrall, by which he reached a certain opinion, with the *decree* of the court. The *opinion* of the court is one thing, and the *decree* of the court is quite another thing. The *opinion* is formed with the distinct object in view of presenting reasons for a *decree* which is to follow. In this case the *opinion* of Chief Justice Simrall (unsatisfactory and unsupported as it is in some important particulars by the proofs in that case) was only the vehicle through which the court produced the reasons which led to the decree dismissing Ragsdale's bill unqualifiedly and absolutely as to the six acres. But surely the opinion which was designed to give the reasons of the court for arriving at a certain conclusion becomes wholly worthless when that conclusion itself is subsequently abandoned by the court, and

the decree dismissing absolutely is revoked and set aside and an amended decree entered dismissing without prejudice to any right in Ragsdale. But the opinion was never any part of the judgment and was never *res adjudicata*. *Buckner* v. *Calcote*, 6 Cush. 432.

Our own high court of errors and appeals, in *Nevitt* v. *Bacon*, 3 George 228, says: "The purport of such an order (*i. e.*, an order dismissing a bill without prejudice) is that the dismissal shall not operate as a bar to a new suit which the party might institute." See also 25 Ala. 625, which is identical in spirit with this. See, too, Story's Equity Pleadings, § 456 and § 793, cited as authority for this view in both the Mississippi and Alabama cases cited; *Patton* v. *Mott*, 34 Am. Dec. 679 ; 2 Daniell's Ch. Pl. and Prac. 993, 994—last three lines of 993 and first four lines on 994; 1 Daniell's Ch. Pl. and Prac. 659, and note 1 at foot of page ; *Hughes* v. *U. S.*, 4 Wall. 232, 233, 234, and 235, last paragraph in opinion.

2. The conditions, coupled with the grant of the twenty-two acres of land (in which is embraced the six acres now claimed), it is now distinctly admitted have not been complied with, and performance of those conditions is with equal distinctness abandoned. There is no controversy about this in this suit.

The land is therefore clearly Ragsdale's unless the railroad company meet the case thus made. It attempts to meet it by setting up the parol agreement as to the six acres between Ragsdale and Smedes. The answer says, with reference to this parol agreement, "all precedent agreements and understandings were ignored and a new agreement made," etc. Here, then, is the new ground on which defendant relies for success.

But the railroad company has wholly failed to comply with the terms of the parol agreement, and has abandoned this agreement also.

The miserable pretext that the company has not built a depot on the six acres because of want of funds is unworthy even of this corporation. The road was completed to Meridian in 1861—more than twenty years before the present bill was filed by complainant.

That this railroad company has never had the few hundred dollars necessary to erect a depot on the six acres is a statement which cannot be credited.    In the nature of things it is bound to be untrue·

But the defendant seems finally to abandon its position as to the six acres agreement—now at length reluctantly admitted at all by it—and makes its last stand on the dictation contract of March, 1866, alleging that this was and is a substitute for the six acres agreement.    But the company confesses non-compliance with this, too, and presents by way of excuse the same matters which it offered for non-compliance with the six acres agreement.

The answer made to those excuses will be our sufficient answer here now.

*J. S. Hamm,* on the same side, filed a lengthy brief.

*W. P. Harris,* on the same side, filed a brief and argued the case orally.

*J. Z. George,* on the same side, filed an elaborate brief.

*W. L. Nugent,* for the appellee.

We unhesitatingly assert that the decision in the case of *Ragsdale* v. *V. & M. R. R. Co.,* 54 Miss. 200, based upon a bill identical with the present and between the same parties, is a conclusive adjudication, and ought certainly to be so treated and considered. This is not a case calling for the relaxation of any rule.    The court will discover that every point made in the case was carefully considered by the court and fully determined.

If there ever was a cause fully litigated, obstinately contended, ably prosecuted, and diligently considered by the courts of the country, this cause furnishes an illustration.    The bill presented the same grounds for relief as are now advanced, the parties were the same, and conclusions on the merits were reached.    The result would, therefore, be an adjudication but for the order made on the petition for reargument. *Mitchell* v. *St. Maxent's Lessee,* 4 Wall. 237 ; *Walden* v. *Bodly,* 14 Peters 161 ; *Durant* v. *Essex Co.,* 7 Wall. 107 ; *Black* v. *Black,* 27 Ga. 40 ; *Holmes* v. *Remsen,* 7 Johns. Ch. 286 ; *Nevitt* v. *Bacon,* 32 Miss. 228 ; *Bigelow* v. *Wilson,* 1 Gray 30 ; Story's Eq. Pl., § 793.

A plea in bar stating a dismissal of a former bill is conclusive

against a new bill if the dismissal was upon hearing, and if that dismissal be not in direct terms "without prejudice." It is a fundamental rule in the administration of justice that a question once litigated and determined between the parties in a court of competent jurisdiction is to be considered at rest. Not to have this effect the dismissal must be for some cause not embracing an adjudication on the merits. *Foote* v. *Gibbs*, 1 Gray 413; *Bigelow* v. *Wilson*, Ib. 299.

The contention of counsel is that the former decree of this court only had the effect to bow Ragsdale out with a respectful invitation to him to reassert his claim at a more convenient time. Courts are not usually given to mature consideration of any question only *not to decide it.* But the dismissal was not in terms " without prejudice" within the rule; it was "without prejudice as to any right of title which the said Ragsdale may *hereafter assert,* either in law or equity to said six acres." To assert a *right of title* implies that the right has arisen, and to assert hereafter, that it has arisen after the entry of the judgment.

The bill is a bald attempt, without provocation, extenuation, or excuse, to renew a controversy begun by Ragsdale in 1867 and persistently kept up. This cannot and ought not to be tolerated. Nor does the law sanction it, with all due deference to counsel. Reason and precedent are against the pretense, and common sense does not sustain it, unless courts are arenas, not to settle controversies, but purely for the gladiatorial contests of contending advocates. *Lang's Heirs* v. *Waring*, 25 Ala. 639, illustrates the correct doctrine. That case had been before the Supreme Court of Alabama and the bill was dismissed, " but without prejudice as to any supposed right which the complainant might have acquired in virtue of his purchase from Messrs. Gayle & Phillips." The court say : " The effect of such reservation in the decree of dismissal is to prevent such decree from constituting a bar to another bill brought upon the same title ; but it by no means compromits the court as a judicial determination in favor of such title. In so *far as the former decisions leave the questions for discussion open,* we must address ourselves to them as though they were for the first time before us."

The whole range of inquiry is, therefore, as to what questions were left open for discussion, and as to that it may be boldly stated that there were *no existing questions* left open for discussion.

In *Innis* v. *Roane*, 4 Call (Va.) 379 *et seq.*, the judgment of the court of appeals contained the following clause at its end: " But this judgment is not to bar or prejudice *any future claim* of the appellee made on further proof to the auditor." It was insisted, in the second suit on appeal, that the former judgment did not preclude the appellees because it was, by the terms of it, to be without prejudice, and there were other facts before the court. 384, 388. Responding to this contention, Roane, J., said: " The question is whether the present cause differs materially from the former; for, if not, the decision in that must govern this." And in concluding his opinion he said: " I can only say that the case is the same now that it was before, and that the former judgment concludes the case." 395, 399.

*W. L. Nugent* also argued the case orally.

COOPER, J., delivered the opinion of the court.

The dismissal by this court of the former bill exhibited by Ragsdale as to the six acres of land now in controversy, " without prejudice as to any right of [or] title which the said Ragsdale may hereafter assert, either in law or equity, to said six acres," left the appellant at liberty to renew the ligitation unprejudiced by any decision in reference to the six acres. The court in effect said, by the modification of its original decree, that for some reason satisfactory to it it would then make no decree whatever, save as to the other lands embraced in the suit. The dismissal was not without prejudice as to any right or title which Ragsdale might thereafter acquire, but as to any which he might " assert." In no event would the decree have affected any other right than that in issue in the suit or dependent on it, and it would have been unnecessary to reserve liberty to the complainant to litigate other subsequently accruing rights. The effect of such dismissal is similar to that of a nonsuit at law, or, under certain circumstances, of remanding a cause to the rules for the introduction of further proof.

In the case of *Innis* v. *Roane*, 4 Call (Va.) 379, referred to by counsel for the appellee, certain officers claimed pensions under the acts of the Assembly of Virginia, and two questions were involved.

First, At what date did the Revolutionary War end? Second, Were the claimants in service at that time? The court decided that the war ended on the 22d of April, 1783, and that the claimants, on the facts then shown, were not in service at that time, but dismissed the cause "without prejudice as to any future claim of the appellees made on fuller proof."

A new suit was instituted, and it was attempted to re-argue the question as to the termination of the war. It was said that the former decision had covered and concluded this question.

In *Lang's Heirs* v. *Waring*, 25 Ala. 626, the former opinion of the court, reported in 17 Ala. 143, was referred to, not as *res adjudicata*, but as a decision upon the question involved.

Our researches have failed to discover any case in which a dismissal without prejudice has been held to operate as a restriction upon the right of complainant to re-litigate the matters in controversy; on the contrary, in all the cases which have fallen under our observation such decrees have only been made where the court has refused to finally decide the cause. In the absence of any restriction in the decree of the right to retry the cause, we must assume that it was intended to be unrestricted. The opinion of the court in the former suit, as reported, contains all that was said on the whole case. Much of this was applicable only to the case as involving both the sixteen acres and the six acres, and was intended to demonstrate both the right of the complainant to the sixteen acres and the right of the company to the six acres. All this was then decision because appropriate and essential to a disposition of the cause, but when the court withdrew its decree and substituted another declaring that as to the six acres nothing should be decided, it necessarily withdrew all argument and findings by which its former decree as to this land had been supported.

Eliminating from the former opinion all expressions having reference solely to the six acres now in controversy, and retaining all that was necessarily said in deciding as to the sixteen acres,

nothing remains therein decided which is conclusive upon the right now asserted by complainant. The extent of the decision is, that the railroad company had abandoned all claim to the sixteen acres and were estopped to reclaim it after Ragsdale, acting on the faith of such abandonment, had conveyed portions of the property to third persons. This estoppel was founded by the court on the parol contract made between Ragsdale and Smedes in 1858, by which the company was to surrender all but six acres, and to retain that on condition of erecting its depot on or adjacent to this land.

Admitting that by consenting to the arrangement made by the three railroad companies in March, 1866, for a joint passenger depot, Ragsdale extended the time for the performance of the condition on which the land was held, and that either the erection of its own depot by the appellee or of the joint depot by the three companies would have been a compliance with the condition of the grant, it was yet necessary that such depot should be erected within a reasonable time, and we are of opinion that by delaying action from March, 1866, to September, 1867, Ragsdale had afforded to the appellee a reasonable time in which, at least, the work should have been commenced, and nothing having then been done by the company in performance of the condition, he was warranted in declaring a forfeiture and re-acquiring his original title.

*The decree is reversed, and a decree directed to be entered here in accordance with this opinion.*

CAMPBELL, C. J., delivered the following opinion in response to suggestions of error made by counsel for the appellee as to the foregoing opinion in this case.

In *Railroad Co.* v. *Ragsdale,* 54 Miss. 200, Ragsdale was held to be entitled to relief as to sixteen acres of the land granted to the railroad company, on the ground that the company was estopped to question his title as to that. We are now asked to estop Ragsdale as to the six acres. We cannot do that, because it would be to employ the beneficent doctrine of estoppel to do wrong, instead of to prevent it. The agreement of the parties was that the

railroad company should have the six acres upon the condition that it put its depot on that parcel of land or contiguous to it, and it has not complied with the condition. The grant of the twenty-two acres was abandoned and a new arrangement made. There was not a release or dispensation by Ragsdale of the condition of the grant, but there was an abandonment of the grant, by the determination of the company not to conform to the Haupt survey, and putting its road elsewhere than was prescribed by the terms of the grant of the twenty-two acres.

When the road was constructed the title of the company to the twenty-two acres was at once subject to reverter to Ragsdale. The condition was broken and the right of the company liable to be defeated by the claim of Ragsdale. That he had consented to the change in the location of the road did not preclude his claim of forfeiture of title for breach of the condition, because *his consent was conditional, and the condition on which he consented was not complied with.* In *Ludlow* v. *Railroad Co.*, 12 Barbour 440, so often cited and much relied on by counsel, the grantor got what he bargained for, but there was some delay in the performance of the condition, and he was held to have acquiesced in and impliedly consented to the loss of time, and to be estopped to claim a forfeiture because of such delay. Here there was not performance by the company, even after time. Ragsdale has never got what he bargained for.

The parol agreement, substituting one thing for another as to the location of the depots, was not obligatory. It was made before the time for performance of the condition of the grant. If it had been carried out according to its terms, it might well be claimed that Ragsdale was estopped to insist on the breach of a condition he had agreed to dispense with, but it is indisputable that his consent to the abandonment of a near approach to the Haupt survey was conditional on the establishment of the depots of the company on or near the six acres, and this condition has not been complied with. The company lost the twenty-two acres by breach of the condition of the grant. Ragsdale's consent to a change of the terms on which the company was to have part of the land was con-

ditional, and the condition was not performed, and therefore his claim to be in as of his original title is just and must be maintained.

It is always a question of intention as to whether the grantor waived or dispensed with a condition, and it is incontrovertible that Ragsdale did not intend to waive the forfeiture or dispense with the condition. He had no thought of freeing the railroad company from its obligation to put its depots on the six acres or contiguous to them, and he did not act inconsistent with his right to insist on performance and claim the estate for a breach of the condition on which he had consented for the company to have the land.

It is unnecessary to inquire whether the decision in 54 Miss. cited above was put on the true ground or not. The result was right as to the sixteen acres as to which relief was afforded to Ragsdale, and it may well be supposed that the reason why the bill was dismissed " without prejudice," so far as related to the six acres, was to give an opportunity for a contest as to that part of the land upon the principles announced by the court, and which had not been made the ground of the claim of the railroad company to any part of the land in the court below. It had claimed all of the land granted to it by Ragsdale, and insisted that its title had become absolute by performance of the condition on which it held. The court was of opinion that it had certainly lost all claim to sixteen acres of the twenty-two, and so decided, but as to the remainder of the land, as to which the parties themselves had made a difference in their dealings with each other, the court finally declined to decide, and left the right to that an open question by dismissing the bill as to that "without prejudice." The effect of that was to decide nothing as to the six acres, and to place the matter just as if there had never been a suit about it.

We have made a careful examination of the suggestions of error, and are satisfied with our former conclusion and adhere to it.