SCOTTISH UNION & NATIONAL INSURANCE COMPANY *v.* WARREN GEE LUMBER COMPANY ET AL.

[80 South. 9, Division A.]

1. PLEADING. *Demurrer. Effect of sustaining.*
   Where demurrers were sustained to two pleas it was not incumbent upon the defendant to offer any proof to sustain them, although plaintiff also joined issue upon them.

2. JUDGMENT. *Bar of offenses. Dismissal without prejudice.*
   Where the original chancery suit filed by insurance companies was not tried on its merits, but was dismissed without prejudice. This left the insurance companies at liberty to make any defense that they might have to a suit upon the merits of the case, where their action in filing the bill had not prejudiced the insured.

3. SAME.
   A party to a suit in one trial has the privilege of making only one defense, if he so desires, but he is at liberty, at a second trial of the same cause, to make as many defenses to the cause of action as he may have. The mere fact of failing to defend upon one ground in one suit cannot estop the party from defending upon this ground in another suit.

4. FIRE INSURANCE. *Iron safe clause. Validity.*
   The so-called "iron safe clause" constitutes a valid and binding part of the contract of insurance.

5. INSURANCE. *Fire insurance. Divisible policies.*
   Where in a fire insurance policy the insurance on each item is separate and distinct from the other items, such a policy is what is known as a divisible policy, and the validity of the insurance under one item would have no effect upon the validity of the insurance as to the others. Such a policy is in effect the same as if there was a separate insurance policy issued on each separate item.

6. INSURANCE. *Fire insurance. Extent of loss.*
   Where boilers were insured against fire in a separate item of the policy, the mere fact that the boilers, after the fire, may have had some value as salvage, does not destroy the fact that they were rendered valueless for the purpose for which they were used, and where the total loss under this item, far exceeded the

sum insured for in the defendant company, there was no question of loss under this item, to be submitted to the jury, and a peremptory instruction for the plaintiff was proper.

7. INSURANCE. *Overinsurance.*
The defense of overinsurance in a fire insurance policy is a valid defense.

8. EVIDENCE. *Admission. Binding effect.*
An admission of record is binding upon the party making it.

9. INSURANCE. *Execution of contract. Requisites.*
To constitute an insurance contract, the minds of the parties must meet as to the terms of the contract.

10. INSURANCE. *Necessity of payment of premium. Delivery of policy*
It is not essential that the premium on a policy be paid or that the policy be actually delivered to the insured before the contract becomes effective.

11. INSURANCE. *Fire insurance. Validity of contract.*
A contract of fire insurance must have been consumated before the fire occurred.

12. FIRE INSURANCE. *Execution of contract.   Offer to pay premiums.*
The mere offer by an officer of the insured to pay the premiums after the fire occurred is not a ratification of the insurance agent's act in the writing of a policy contrary to instructions.

13. INSURANCE. *Action on policy. Estoppel to deny execution of policy.*
Where under the provisions of a fire insurance policy concurrent insurance to a stipulated amount was permitted and insured authorized the agent of the insurance company to write additional insurance provided he procure the consent of other insurers of the property, and insured learned after the fire that the agent had written the insurance and then plaintiff claimed such insurance, this did not estop plaintiff from afterwards repudiating such contract of insurance upon discovering that the consent of the other insurers had not been obtained by the agent writing such insurance.

14. INSURANCE. *Pleading. Overinsurance.*
Where in an action on a fire insurance policy which had permitted a stipulated amount of concurrent insurance, the defendant alleged that there was overinsurance without its consent and the replication put such allegation in issue, it was not necessary for the defendant to affirmatively plead a waiver of the provision as to the permitting of additional insurance in order to render

admissible testimony as to the consent of its general agent to such overinsurance.

15. Insurance. *Limitation of action by terms of policy. Waiver.*

An insurance company waived a provision in its policy requiring action by insured on policies to be brought within one year, where, before the expiration of one year from the fire, the company filed an original bill in chancery to cancel the policy, which suit was pending for more than a year.

16. Insurance. *Union Mortgage Clause.*

The provisions of section 2596 of the Code of 1906 (Hemingway's Code, section 5060), containing the "Union Mortgage Clause," providing that a policy shall not be invalidated by the act or neglect of the mortgagor or owner, etc., applies to insurance taken out on buldings by a mortgagor, as well as insurance taken out by the grantor in a deed of trust.

17. Vendor and Purchaser. *Vendor's lien reserved in deed.*

A vendor's lien is in the nature of a mortgage when the lien is expressly reserved in the deed, it is a contract that the land shall be subject to the lien until the purchase money is paid, and it is in reality a mortgage.

18. Insurance. *Provisions of statute.*

By attaching the loss payable clause to its policy of insurance the company recognizes the rights of the mortgagee, and under the rule announced in the *Bacot case*, 96 Miss., 223, section 2596 of the Code of 1906, is automatically written into the insurance contract. In such case, the rights of the mortgagee under the policy turn upon a construction of the statute, and if the mortgagee is entitled to recover it is by virtue of this statute, and independent of the provisions contained either in the original policy or the mortgage clause, in so far as the same may conflict with the statute.

19. Insurance. *Persons affected by breach. Trustee under vendor's lien.*

Where, by a loss payable clause attached to a policy, the loss was made payable, as his interest might appear to a trustee of the vendor's lien expressly reserved in the deed of conveyance of the insured property, such trustee was protected by Code of 1906, section 2596 (Hemingway's Code, section 5060), from the defense of forfeitures and the breaches of warranty committed by the vendee.

20. INSURANCE. *Buildings.*

A policy insuring a planing mill plant, in which recovery was limited to the buildings and whatever may be properly considered as a part of the bulidings, covered the machinery attached to the buildings, which thereby constituted a part of the buildings, and also the boilers, foundations and inside of the buildings as a part thereof.

21. INSURANCE. *Fire insurance. Apportionment of loss.  Rights of mortgagee.*

Under section 2592, of the Code of 1906, in case of a total loss of real property or buildings, the insured can recover the amount of the policy, or the amount of each item thereof and each policy of insurance constitutes a separate contract regardless of any concurrent insurance.

22. SAME.

The Code of 1906, section 2592 (Hemingway's Code, section 5056), applies to the trustee or mortgagee of insured property and when there has been a total loss, there cannot, as to the mortgagee, be an apportionment among the various insurers of the loss under section 2596 of the Code of 1906 (Heminway's Code, section 5060).

APPEAL from the circuit court of Forrest county.

HON. PAUL B. JOHNSON, Judge.

Suit by G. L. Hawkins, Trustee, and the Warren Gee Lumber Company, against the Scottish Union & National Insurance Company.  From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*McLaurin & Armistead, Baskin & Wilbourn,* and *E. J. Bowers,* for appellant.

*Watkins & Watkins, C. R. Connor, S. E. Travis, Sullivan & Sullivan,* and *H. S. Gray,* for appellees.

SYKES, J., delivered the opinion of the court.

G. L. Hawkins, trustee, and the Warren Gee Lumber Company, filed suit in the circuit court of Forrest county against the defendant insurance company, based upon a

fire insurance policy for one thousand dollars. The property insured and burned was a planning mill plant. . The insurance policy is a divisible item policy, and by its terms provides:

"This policy being for proportionate amounts of each item, as shown by form hereto attached and understood to be the written portion of the policy."

These items as finally amended are as follows:

"(1) $2,000—On their one-story, frame, composition-roof building, including additions and foundations, platform attached within one hundred feet of buildings, situated on southwest side of G. & S. I. R. R., and partly on right of way, near the town of Mt. Olive, Miss.

"(2) $9,450—On machinery of every description, being item 2 of the form.

"(3) $400—On their one-story, frame, composition-roof boiler house, situated fifty feet southwest of planer building.

"(4) $2,300—On boiler, foundations, settings including stacks and pumps between boiler house and main buildings.

"(5) $3,100—On their one-story, frame, composition-roof dry-kiln building, including piping, hangers, all dry-kiln apparatus of all kinds and tools, situated north of main building.

"(6) $5,000—On their stock of lumber, rough and dressed, being item 6 of the form.

"(7) . $300—On their one-story, frame, shingle-roof office building, situated on premises and entirely isolated from mill and dry-kiln buildings.

"(8) $200—On their office furniture and fixtures of every description inculding iron safe, all while contained in the above described building.

"$22,750 total concurrent insurance permitted."

The amount of insurance under each item is the same proportion of the amount of total insurance permitted under that item that one thousand dollars bears to

twenty-two thousand seven hundred and fifty dollars, or one hundred two thousand two hundred and seventy-fifths of the total amount of insurance allowed under each item.

Attached to the policy is a loss payable clause, which reads as follows;

"Any loss that may be ascertained and proven to be due the assured under this policy shall be held payable to G. L. Hawkins, trustee, as interest may appear; balance to assured."

The Mt. Olive Lumber Company sold this plant to George D. Sisson. In the deed to Sisson a vendor's lien for the balance of the unpaid purchase money is reserved. This amount was eight thousand dollars evidenced by four promissory notes, each for two thousand dollars, dated April 8, 1904, and due one year from date, bearing six per cent. interest from date, and containing a provision for the payment of ten per cent. attorney fees if placed in the hands of attorneys for collection. Sisson, by deed, conveyed the plant to the Warren Gee Lumber Company on April 16, 1904, reserving in this deed a vendor's lien for unpaid purchase money. The fire which destroyed this property occurred on December 22, 1904. The unpaid purchase money at the time of the fire was evidenced by the notes above referred to payable to G. L. Hawkins, trustee. The Warren Gee Lumber Company had a number of other insurance policies with various companies covering this plant at the time of the fire. The declaration was filed on April 19, 1913. At the same time, in the same court, similiar suits were filed against nine other insurance companies on policies similiar in all material respects to this one, and all containing the same loss payable clause.

. The declaration alleges that the total amount of insurance outstanding at the time of the fire was eighteen thousand seven hundred and fifty dollars, and that the

interest of the trustee, Hawkins, including the principal and interest on his debt, together with attorney fees, amounts to forty-nine and four tenths per cent. of the total insurance; that Hawkins is entitled to recover this amount, and the Lumber Company the residue. The amount of recovery under this policy, claimed by Hawkins, trustee, less the interest due on same is four hundred and ninety-four dollars. There was a total loss claimed by the plaintiff on all of the items in the policy except items 7 and 8, under which two items there was no loss. Some time before the filing of these ten suits in the circuit court of Forrest county, plaintiffs filed suit in the chancery court of Jackson county against two insurance companies for the sum of four thousand dollars. This chancery suit was before this court upon a demurrer to the bill overruled in the lower court. The case is styled *Niagara Insurance Co.* v. *Warren Gee Lumber Co.,* and is reported in 94 Miss. 159, 47 So. 551. The present suit has also been in this court once before, styled *Hawkins et al.* v. *Scottish Union & National Insurance Co.,* 110 Miss. 23, 69 So. 710. The litigation between these parties about this insuranc was first begun in April, 1905, when the insurance companies filed a bill in the chancery court of Forrest county against these defendants to cancel the policies. Reports of this original chancery suit are found in 103 Miss. 816, 60 So. 1010, and 104 Miss. 636, 61 So. 310. For a complete understanding of this suit it is necessary to examine the above reports, which contain further facts not herein repeated.

In this case numerous pleas, replications, rejoinders, and demurrers were filed, which we shall later discuss. After the introduction of testimony by both parties, the court peremptorily instructed the jury to return a verdict in favor of the plaintiffs, apportioning the amount of recovery by each as claimed in the declaration. Judgment was entered upon the verdict of

the jury in accordance with this instruction, from which judgment this appeal was prosecuted.

The first assignment of error argued by counsel for appellant is that:

"The court erred in sustaining plaintiff's demurrer to defendant's rejoiner to plaintiff's replication to defendant's sixth special plea and to defendant's seventh special plea."

The sixth special plea set up the defense that the Warren Gee Lumber Company, at the time of the issuance of the policy of insurance, was conducting the business of a sawmill, and that the contract of insurance was made in and about and with reference to same, and that plaintiff had not at that time paid the privilege tax as required by law.

The seventh special plea set up, as a defense to the maintaining of this suit by the Warren Gee Lumber Company, with reference to the sixth item, which was the insurance on the lumber, that this plaintiff had failed to keep a set of books as required by the "iron safe clause" contained in this policy, and had failed to prove this loss from the books. This clause in the policy reads as follows:

"Warranty to Keep Books and Inventories, and to produce Them in Case of Loss.

"Iron Safe Clause—The following convenant and warranty is hereby made a part of this policy:

"(1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium such date shall be returned.

"(2) The assured will keep a set of books, which shall clearly and painly present a complete record of business transacted, including all purchases, sales and

shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during continuance of this policy.

" (3) The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such · failure shall continue a perpetual bar to any recovery thereon."

The replication of plaintiffs to the sixth and seventh pleas of the defendant stated in effect that, because the defendant and the other insurance companies had not set up in their bill in the original chancery suit, reported in 103 Miss. 816, 60 So. 1010, and 104 Miss. 636, 61 So. 310, above set out, the facts alleged in these pleas, it was thereby estopped to plead them in this case. The rejoinder of defendant to this replication set up the fact that this original bill in chancery had been dismissed without prejudice. Plaintiff's demurrer to this rejoinder alleged in substance that the dismissal of the suit without prejudice made no difference. This demurrer was sustained. Replications to these two special pleas joining issue on them were also filed by the plaintiffs.

The fact, however, that issue was also taken on these two pleas can made no difference, because the plaintiffs tested as a matter of law the sufficiency of these defenses, and the sustaining of the demurrer precluded the defendants from relying upon or proving these pleas. After the sustaining of the demurrers it was not incumbent upon the defendant to offer any proof to sustain these two pleas, because the court had

decided as a matter of law that they were insufficient. These two defenses can only apply to the Warren Gee Lumber Company, and not to the rights of G. L. Hawkins, trustee, as will be shown later on.

The original chancery suit was not tried on its merits, but was dismissed without prejudice. This left the insurance companies at liberty to make any defense that they might have to a suit upon the merits of the case, where their action in filing the bill had not prejudiced the insured. A party to a suit in one trial has the privilege of making only one defense if he so desires, but he is at liberty at a second trial of the same cause to make as many more defenses to the cause of action as he may have. The mere fact of failing to defend upon one ground in one suit cannot estop the party from defending upon this ground in another suit. The failure to rely upon these defenses in the original bill did not mislead the present plaintiffs or prejudice their claim in any way. There is no element of an estoppel here presented. Neither was there any waiver of these defenses. In discussing a similar question the supreme court of the United States stated:

"Undoubtedly, it was competent for the company to waive that or any other defense arising out of the conditions of the policy; but, clearly, its willingness, at one trial, to risk its case before the jury upon a single one of several issues made did not preclude it, at a subsequent trial, from insisting upon other defenses, involving the merits, which had not been withdrawn of record, or abandoned in pursuance of an agreement with the plaintiff." *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; *Nevitt* v. *Bacon,* 32 Miss. 212, 66 Am. Dec. 609; *Ragsdale* v. *Railroad Co.,* 62 Miss. 480.

The so-called "iron-safe clause" constitutes a valid and binding part of the contract of insurance, as has been repeatedly held by this court. *Insurance Co.* v.

*Mount,* 90 Miss. 663, 44 So. 162, 45 So. 835, 15 L. R. A. (N. S.) 471; *Insurance Co.* v. *Dorsey,* 102 Miss. 86, 58 So. 778; *Insurance. Co.* v. *Bourgeois,* 105 Miss. 711, 63 So. 212. The defense of the "iron-safe clause" would only apply to item 6, or the insurance on lumber.

The policy in suit is what is known as a divisible item policy; that is to say, that the insurance on each item is separate and distinct from the other items. It is in effect the same as if there was a separate insurance policy issued on each separate item. The validity of the insurance under one item would have no effect upon the validity of the insurance as to the others; or, as it is sometimes termed, it is a schedule policy which is divisible. *Darden* v. *Insurance Co.,* 109 Miss. 512, 68 So. 485; *Mitchell* v. *Insurance Co.,* 72 Miss. 53, 18 So. 86, 48 Am. St. Rep. 535.

The next assignment of error argued is: "Because the court erred in not submitting to the jury the issues of fact as to the extent of the loss, and particularly so as to the lumber, the subject of the insurance under item 6 of the contract sued on, and the damage to the boilers, foundations, etc., under item 4 in the contract sued on."

The decision upon the first assignment of error makes it unnecessary to discuss the extent of loss as to the lumber. The testimony as to the loss under item 4 shows the total loss to have been two thousand, three hundred dollars, the amount of insurance allowed under this item. The testimony of one witness is to the effect that two of the boilers were worth about two hundred fifty dollars each, but that they were badly damaged. There is no testimony to show that they were not practically ruined. The other testimony for the plaintiff is to the effect that there was a total loss under this item. The mere fact that the boilers may have had some value as salvage does not destroy the fact that they were rendered valueless for the purposes for which they were used. The total loss under this item far ex-

ceeded the sum insured for in the defendant company. There was, therefore, no question of loss under this item to be submitted to the jury. *Havens* v. *Fire Ins. Co.,* 123 Mo. 403, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570.

The next assignment of error is that the court erred in overruling the motion of the defendant at the conclusion of plaintiffs' testimony to exclude the testimony and instruct the jury to return a verdict in the defendant's favor. At the conclusion of the testimony for the defendant, the defendant again moved the court for a peremptory instruction, which motion was overruled, and this assignment of error is presented.

It is next argued that the court erred in giving peremptory instructions in favor of the two plaintiffs. In discussing these assignments of error as to the Warren Gee Lumber Company it is necessary to state the material parts of the testimony relating thereto, and also to state further the issues upon which the case was tried as shown by the pleadings. The fifth plea of the defendant set up a violation of this clause of the insurance policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the assured now has or shall hereafter make or procure any other contract of insurance whether valid or not on the property covered in whole or in part by this policy."

It is alleged that the total amount of insurance allowed was twenty-two thousand, seven hundred fifty dollars, that the plaintiff had procured this amount of insurance and in addition thereto and afterwards he procured additional insurance to the amount of four thousand, dollars, making a total of twenty-six thousand, seven hundred fifty dollars concurrent insurance; that this four thousand dollars was in excess of the insurance it was permitted under this policy to carry, and that this additional insurance was procured without the

knowledge or consent of the defendant; that the terms of this provision have never been waived by the defendant; and that by reason of a breach of this promissory warranty the contract of insurance was null and void. The replication of plaintiffs to this plea admits the total amount of insurance outstanding at the time of the fire to be twenty-two thousand, seven hundred fifty dollars, but denies that plaintiff procured four thousand dollars additional insurance as alleged in the plea. The plea further alleged that the four thousand dollars additional insurance was issued on the 14th day of December, 1904.

That the defense of overinsurance is a valid one is not, and cannot be, denied. *Insurance Co.* v. *Nelson,* 105 Miss. 437, 62 So. 425; *Insurance Co.* v. *Crawford,* 110 Miss. 493, 70 So. 579.

The testimony in the case shows that prior to December 9, 1904, the Warren Gee Lumber Company had nine insurance policies, totaling the sum of seventeen thousand seven hundred fifty dollars, covering this plant; that on December 9th, wishing to increase this insurance for reasons unnecessary to state, the secretary of the lumber company applied for five thousand dollars additional insurance to P. L. Gaston, a general insurance agent at Hattiesburg, who was the agent for all of the insurance companies in which the lumber company was insured. It is claimed by the plaintiff that Gaston actually issued policies for this five thousand dollars. A policy for one thousand dollars was then delivered to Hawkins, trustee; the other two policies were not delivered by Mr. Gaston, and there is a suit pending to recover on these policies in the chancery court of Jackson county, above referred to. At this time an amendment was added to the insurance policies previously issued, authorizing the total amount of concurrent insurance to be twenty-two thousand seven hundred fifty dollars, as shown by the items in this policy. The total amount of concurrent insurance

before this was seventeen thousand seven hundred fifty dollars. It is admitted by the plaintiff that Gaston issued this five thousand dollars insurance. This admission is shown by the record in this case and is binding upon the plaintiff. *Carradine* v. *Carradine,* 33 Miss. 733.

The only issue as to the overinsurance arises about some policies written on or about December 14th by M. M. Evans, of Mt. Olive. The testimony relating to the application for this insurance and other material questions affecting it is conflicting. The testimony of the plaintiff is in effect that the manager of the lumber company, Mr. Tindolph, acting in accordance with instructions from the secretary of the company, discussed this question of insurance with Mr. Evans. The testimony of Mr. Evans and Mr. Tindolph is conflicting The testimony of Mr Tindolph is to the effect that he called on Mr. Evans and conditionally applied for five thousand dollars additional insurance upon the plant; that he told Mr. Evans, before issuing the insurance, to see Mr. Gaston and obtain his permission to do so, as Mr. Gaston was the agent of the other companies with whom the plant was insured; that Mr. Evans accepted this application conditionally, and stated that before issuing the insurance he would see Mr. Gaston and obtain his permission to do so. Tindolph testified that he neither saw nor heard from Mr. Evans until the day after the fire, when he learned for the first time that Mr. Evans had written four thousand dollars additional insurance; that he notified Mr. Sisson to this effect, and went with Sisson to Evans' office, when Sisson tendered to Evans the premiums for these policies, which Evans declined to accept. Evans also declined to deliver the policies to Tindolph or Sisson. The uncontradicted testimony shows that Evans actually wrote three insurance policies on this plant, aggregating the sum of four thousand dollars. A proof of loss was duly filed with the insurance companies (ex-

cept Evans' companies), in which the plaintiff claimed the four thousand dollars insurance issued by Evans. Plaintiffs also claimed this insurance in the pleadings in the original chancery suit. Some of the agents of the insurance companies examined Sisson and Tindolph under oath, and in this examination the Evans insurance is also claimed.

The plaintiff admits claiming this insurance, but states that at the time it believed that Evans had obtained permission from Gaston to write it. Evans testified that Tindolph made oral application to him for five thousand dollars insurance; that Tindolph told him that there was. other insurance; that nothing whatever was said about his seeing Gaston before writing this insurance; that he was told that the total amount of concurrent insurance permitted was twenty-three thousand dollars, and that he thought Tindolph was the party who told him; that it was some one in authority. Evans does not say what, if anything, he told Tindolph when the application for the insurance was made. He further testified that before the fire he informed Tindolph that he had written four thousand dollars of insurance upon the plant. The record is silent as to whether or not Tindolph said anything to this. Nothing was said about the premiums before the fire. Evans was asked why he retained the policies after they were written, and replied that he did not know; "that he never figured on putting the policies in sometimes for two or three months; that was no special reason."

The position now taken by the parties to this suit as to the issuance of these Evans policies, and that taken by them just after the fire, is contradictory. After the fire the plaintiff's were claiming in their sworn examination and in their proof of loss this Evans insurance, and the Evans insurance companies, through Evans, were claiming otherwise. Now they have reversed their positions. To constitute an insurance contract the. minds of the parties must meet as to the

terms of the contract. It is not essential that the premiums on the policies be paid, or that the policies be actually delivered to the insured, before the contract becomes effective. *Insurance Co.* v. *Lumber Co.,* 94 Miss. 159, 47 So. 551; *Insurance Co.* v. *Wylie,* 110 Miss. 681, 70 So. 835; *Insurance Co.* v. *Alexander,* 12 So. 25; *Insurance Co.* v. *McIntosh,* 86 Miss. 236, 38 So. 775.

If the jury believe the testimony for the plaintiffs, then there was only a conditional oral application to Evans for five thousand dollars of insurance to be written after he had obtained the consent of Mr. Gaston; that Evans wrote four thousand dollars, but never reported it to the plaintiff until after the fire. The contract of insurance must have been consummated before the fire. The mere offer to pay the premium by Sisson was no ratification. Under this testimony there was no meeting of the minds of the parties. On the other hand, if the jury believe the tesimony of Evans and there was an unconditional application for five thousand dollars of insurance, that four thousand dollars was written, and Tindolph notified of this fact, then the jury could have found, from this testimony and that of Sisson and Tindolph, claiming this insurance after the fire, that there was a meeting of the minds before the fire. The claiming of this insurance after the fire was only a circumstance to be considered by the jury in connection with the other testimony. By it the plaintiff was not estopped to deny this contract of insurance. Especially is this true, because the jury could believe under this testimony that it was claiming the insurance, because it believed that Evans had obtained Gaston's permission to write it.

It is contended by the plaintiff that any testimony as to the consent of Gaston to this additional insurance was inadmissible, because the defendant had not affirmatively pleaded a waiver of the provision of the contract. The defendant, however, alleged that this was overinsurance issued without its consent. The repli

cation to this plea put this fact in issue and it was unnecessary for the defendant to affirmatively plead it.

It was error for the court to instruct the jury to return a verdict in favor of the Warren Gee Lumber Company.

The insurance company also relied upon this provision in the policy: "No sort of action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

They allege that this suit was not begun within one year, and therefore was not maintainable. Without stating in detail the status of the pleading relating to this defense, it is sufficient to say that the court held as a matter of law that this was not a good defense. The facts stated show that before the expiration of one year the insurance companies filed their original bill, and that that suit was pending in the chancery court for over a year. By their conduct the insurance companies waived this provision in the policy and cannot now rely upon it. *Insurance Co.* v. *Smith,* 95 Miss. 347, 48 So. 1020.

We now come to consider the status of G. L. Hawkins, trustee. It is contended by the appellant that all of the defenses permitted against the lumber company are also good against Hawkins; that Hawkins, by reason of the loss payable clause, is merely an appointee to receive such proportion of the insurance due to the Warren Gee Lumber Company that he could establish his right to as trustee, subject to all forfeitures and breaches of warranty that might be committed by the Warren Gee Lumber Company. It is contended, in short, that Hawkins is not protected by section 2596, Code of 1906 (section 5060, Hemingway's Code). It is admitted by appellant that these defenses would not be good as to the trustee if this section is applicable, and if it writes into the policy by operation of

law the provisions of this section, which is commonly termed "the union mortgage clause." Appellant contends that this section of the Code only applies, first, where the fire insurance policy is taken out by a mortgagor or grantor in a deed of trust; and, second, where the mortgagor or grantor in a deed of trust "on buildings" takes out the insurance. It is true that there was no trust deed on the property at the time of the fire, and, if this section of the Code was only applicable to the grantor in a deed of trust, Hawkins' rights would not be protected. This section, however, applies to insurance taken out on buildings by a mortgagor, as well as insurance taken out by the grantor in a deed of trust.

"When a mortgage clause is inserted in an insurance policy, its effect is limited and controlled by section 2596 of the Code of 1906, and the rights of the parties are determined by the provisions of the above statute, which automatically writes itself into every insurance contract where the insurance company allows a mortgage clause to be inserted. In other words, where an insurance contract is made with the owner of property on which there is a mortgage, and the mortgagor, with the consent of the insurance company, undertakes to have a mortgage clause inserted in favor of the mortgagee, the statute says that such contract 'shall have attached, or shall contain the following mortgage clause,' etc., and proceeds to give in detail what this clause shall contain. This, then, irrespective of any mortgage clause inserted by the insurance company to the contrary, constitutes the only mortgage clause that can be placed in the policy. . . . The rights of the mortgagee under this policy turn upon a construction of this statute, and, if the mortgagee is entitled to recover, it is by virtue of this statute and independent of the provisions contained either in the original policy or the mortgage clause, in so far as same may conflict with the statute." *Bacot* v. *Insurance Co.,* 96 Miss. 223, 50

So. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262.

In the Bacot Case the property insured had been conveyed by deed to Bacot. There was a written agreement between the parties that upon the repayment to Bacot of a certain amount by a certain time the property would be reconveyed by Bacot to them. There was no deed of trust. The court held this to be a mortgage and Bacot protected as mortgagee.

A vendor's lien is in the nature of a mortgage. When the lien is expressly reserved in the deed, it is a contract that the land shall be subject to the lien until the purchase money is paid, and it is in reality a mortgage. *Warford* v. *Hawkins,* 150 Ind. 489, 50 N. E. 468.

Mr. Pomeroy, in speaking of this character of lien, says:

"This peculiar species of lien differs essentially from that which equity raises by implication in favor of the grantor, since it is based upon and created by express contract. It is in all essential elements a mortgage. The deed is made to embody an informal mortgage or defeasance, and is thus prevented from being absolute so long as the price remains unpaid. The lien is made a matter of record, is thus a constructive notice to all subsequent dealers with the land, and is in fact governed by the rules which regulate the effect of an ordinary mortgage. It is in fact an American mode of realizing the purely equitable conception of a mortgage, stripped of all its legal forms and features." Pomeroy's Equity Jurisprudence, vol. 3 (3 Ed.), p. 2523; *Mason* v. *Moody,* 26 Miss. 184; *Freeman* v. *Wilson,* 51 Miss. 329.

By attaching the loss payable clause to the policy the insurance companies recognized the rights of the mortgagee, and, under the rule announced in the Bacot Case, section 2596 of the Code is automatically written into this contract. Under this section none of the

defenses above numerated as to the Warren Gee Lumber Company is applicable to the trustee.

Under this insurance policy the trustee is entitled to recover only on those items in which he had an insurable interest. He is further limited in his recovery to buildings and whatever may be properly considered as a part of the buildings. This insurance covers item 1, of course. Item 2 is "on machinery of every description." The recovery under this item, as shown by the itemized statement, consisted practically of machinery attached to buildings and thereby constituted apart of the buildings. Item 3 consisted of buildings. Item 4, boilers, foundations, etc., were inside of buildings and a part thereof. Item 5 consists of buildings and fixtures. *Havens* v. *Insurance Co.,* 123 Mo. 403, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570.

Section 2596, Code of 1906, contains this provision: "In case of any other insurance upon the within decribed property this company shall not be liable under this policy for a greater portion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise: . . . Provided, nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of section 2592."

Under section 2592 it has been decided that in case of total loss of real property or buildings the insured can recover the amount of the policy, or the amount of each item thereof; that each policy of insurance constitutes a separate contract, regardless of any concurrent insurance. *Assurance Co.* v. *Phelps,* 77 Miss. 625, 27 So. 745; *Insurance Co.* v. *Shlenker,* 80 Miss. 667, 32 So. 155.

The rights of a mortgagee under section 2592 of the Code have not heretofore been considered. A careful examination of the question convinces us that section

2592 is also applicable to the trustee or mortgagee, and that, when there has been a total loss of real property or buildings under the policy, the above quotation from section 2596, relating to an apportionment of the loss between the insurance companies, cannot apply. If there could be such an apportionment, equity would perhaps have retained jurisdiction of this case in the first instance. It is stated in the opinion in that case that:

"While it is true that each of these policies contained the coinsurance clause hereinbefore set out, still they are independent contracts, the liability of one company not being affected by that of any other company; and this clause can afford no ground for an accounting, or to enforce contribution, for it provides for neither. What one company may be compelled to pay under its contract is of no concern to any of the other companies, this provision of the contract simply providing the measure of each company's independent liability."

The trustee was therefore entitled in this case to recover the full amount of each item of insurance, except item 6, 7, and 8. He was entitled to a peremptory instruction to this effect. The amount of recovery allowed him under the instruction of the court was not more than he was entitled to, though it was based upon a mistaken proportion.

Affirmed as to G. L. Hawkins, trustee, and reversed and remanded as to the Warren Gee Lumber Company.

*Affirmed and reversed and remanded.*