255 So.2d 652 (1971)
UNITED STATES FIDELITY & GUARANTY CO. et al.
v.
Fox ARRINGTON et al.
No. 46428.
Supreme Court of Mississippi.
December 6, 1971.
*653 Watkins & Eager, W. Thad Cochran, Jackson, Bryant & Stennis, Gulfport, for appellants.
White & Morse, Floyd & Floyd, Gulfport, for appellees.
RODGERS, Presiding Justice.
This appeal is from a judgment of the Circuit Court of Harrison County against the appellant-insurance companies and in favor of Mr. Fox Arrington and Mrs. Jo Drake Arrington in the total amount of $30,000.00 and in favor of Hancock Bank in the total amount of $3,524.74. Each of the three insurance companies was to pay one-third (1/3) of each award.
Mr. Fox Arrington and Mrs. Jo Drake Arrington, plaintiffs-appellees (hereinafter referred to as the Arringtons) were owners of a lumber and building supply business known as Service Lumber Company located in Gulfport, Mississippi. The Arringtons sold the Service Lumber Company to Mrs. Irma L. White on April 22, 1968, retaining a vendor's lien on all of the assets of the business. The contract of sale required the purchaser to maintain adequate liability insurance and sufficient fire insurance to cover the Arringtons' security interest. Pursuant to this provision the fire insurance policies, upon which this suit is brought, were issued by the three appellant-insurance companies in the amounts of $18,333.00 for two and one policy being $18,334.00. This made a total insured value of $55,000.00. These policies were issued through Mr. Robert Portwood, agent for the three insurance companies, with the Arringtons named as loss payees. Attached to and made a part of the policies was a "Lumber Form" which set out the coverage of the policies. According to the attached form the following assets were covered:
"... buildings, furniture, fixtures & tools, stationery and supplies, equipment, lumber, building materials and other stock usual to a Retail Lumber Yard... ."
On May 8, 1968, Mrs. Irma L. White conveyed the Service Lumber Company and all property purchased from the Arringtons to a corporation known as Mississippi Custom *654 Supply, Inc., formed by herself and her husband, Mr. Robert S. White. In December, 1968, the Mississippi Custom Supply, Inc., entered into a field warehouse arrangement with St. Louis Terminal Field Warehouse Company, whereby a field warehouse was established on the premises and non-negotiable warehouse receipts were issued representing lumber and building material and other inventory. Mississippi Custom Supply, Inc., used these receipts as security to obtain a loan from the appellee, Hancock Bank. Subsequent to this loan, the Hancock Bank and the St. Louis Terminal Field Warehouse Company were added to the three insurance policies as additional loss payees.
Mississippi Custom Supply, Inc., paid the monthly installments to the Arringtons from May, 1968, through March, 1969, and a partial payment was made in June, 1969. On July 18, 1969, the Arringtons repossessed the business under the terms of the vendor's lien. Mr. Fox Arrington began taking inventory and collecting accounts receivable. He was assisted by Mr. Jerry Bullock, who was manager of Mississippi Custom Supply, Inc., at the time of the repossession, and was owner of 49 1/2% of the stock of the Company.
On July 18, 1969, or the following day, Mr. Robert Portwood, agent for the three insurance companies, advised Mr. Arrington, pursuant to his request, that the three insurance policies were in full force and effect with the premiums thereon paid in advance for three years from April 24, 1968. On July 25, 1969, Mr. Portwood wrote Mississippi Custom Supply, Inc. that the three fire insurance policies were in full force and effect.
At the direction of Mr. Robert S. White, whom Mr. Arrington would not allow on the premises, Mr. Jerry Bullock, who was assisting Mr. Arrington in taking inventory, removed the three fire insurance policies from the safe  which would not lock  at the Mississippi Custom Supply, Inc. office and delivered them to Mr. Robert Portwood for cancellation. This was sometime between July 25, 1969, and July 31, 1969. Mr. Portwood admitted that no written notice of cancellation was given the loss payees.
Pursuant to the filing of bankruptcy proceedings on July 31, 1969, by Mr. Robert White, a hearing was held on September 26, 1969, at which time the Arringtons now contend that they first knew of the cancellation of the fire insurance policies. Following the discovery of the cancellation, the Arringtons notified Mr. Portwood that they considered the cancellation void as to their right to recover for losses sustained as a result of Hurricane Camille having struck the Mississippi Gulf Coast on August 17, 1969. Proof of loss forms were requested by the Arringtons but to no avail, as neither the three appellant-insurance companies nor their agent, Mr. Portwood, replied.
At the trial of the case Mr. Arrington testified to values of the buildings, which values were in excess of those set out in the proof of loss forms which the Arringtons had obtained from other sources and filed with the insurance companies. When all of the testimony was completed, the court allowed a peremptory instruction for the Hancock Bank and directed a verdict in its favor for the amount of their note plus interest and attorney's fees. The court allowed a peremptory instruction for the Arringtons on liability, because, in the opinion of the court, the policies were not cancelled as far as the lienholders are concerned.
Upon these facts the issues presented to this Court are: (1) Was the delivery of the policies for cancellation by Mr. Bullock done in the capacity of agent for the Arringtons, and (2) Was the cancellation effective in cutting off any rights of recovery which existed in the loss payees.
Based upon the case of Pan American Petroleum Corporation v. Bardwell, 203 Miss. 833, 33 So.2d 451 (1948), the burden of proving an agency relationship was upon the parties asserting it  in this case the insurance companies. We believe *655 that the insurance companies failed to meet this burden for the following reasons: (1) At the time of the repossession by Mr. Arrington, Mr. Bullock was the general manager of Mississippi Custom Supply, Inc. and owner of 49 1/2% of the stock; (2) During the time Mr. Bullock was helping take inventory he was not being paid by Mr. Arrington; and (3) In the presence of Mr. Portwood, the insurance agent, Mr. Bullock was directed by Mr. Robert White, Vice President and former general manager of Mississippi Custom Supply, Inc., to remove the insurance policies from the safe  which would not lock  located at the business and give them to Mr. Portwood for cancellation.
In determining whether or not an agency exists the question is ordinarily one of fact to be determined by the relation and, more importantly, the intention of the parties. 3 Am.Jur. Agency § 21, 430.
It is not alleged that Mr. Bullock was acting as agent for Hancock Bank; therefore, this issue does not concern Hancock Bank.
In answer to the second question, we find that Section 5695, Mississippi Code 1942 Annotated (1956) provides for the "standard" or "union" clause to be inserted in fire insurance policies. That statute reads as follows:
"§ 5695. Mortgage clause.

Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz.:
"Loss or damage, if any, under this policy, shall be payable to (here insert name of the party), as . .. mortgagee (or trustee), as ... interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, ... This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation... ."
There is no question but that this section applies to the policies of insurance in the case at bar, for the Mississippi Supreme Court has said:
"When a mortgage clause is inserted in an insurance policy, its effect is limited and controlled by section 2596 of the Code of 1906 (now § 5695 Miss.Code 1942 Ann. 1956), and the rights of the parties are determined by the provisions of the above statute, which automatically writes itself into every insurance contract where the insurance company allows a mortgage clause to be inserted... .
"The effect of this statute is to make the contract between the insurance company and the mortgagee a new and independent contract... ." Bacot v. Phoenix Insurance Co., 96 Miss. 223, 241-242, 50 So. 729, 732 (1909).
This rule of law was followed in the case of Scottish Union and National Insurance Company v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9 (1918). The Court also held in this case that:
"A vendor's lien is in the nature of a mortgage. When the lien is expressly reserved in the deed, it is a contract that the land shall be subject to the lien until the purchase money is paid, and it is in reality a mortgage. Warford v. Hankins, 150 Ind. 489, 50 N.E. 468." 118 Miss. at 758, 80 So. at 14.
See also United States v. Sentinel Fire Insurance Co., 178 F.2d 217 (5 Cir.1949).
In the case at bar the contract for sale attached a vendor's lien upon all of the *656 assets of the business with said lien being in effect a mortgage; therefore, by virtue of Section 5695 Mississippi Code 1942 Annotated (1956) being written into every fire insurance policy the plaintiffs-appellees were entitled to a ten days' written notice of cancellation which was admittedly not given. For this reason the insurance companies were liable for loss or damage to the buildings as they had not effectively given notice of cancellation.
This brings us to another point, that is, whether or not the insurance companies are liable for loss or damage to the equipment and materials, etc. It is the contention of plaintiff-appellees that the liability of the insurance companies for equipment and materials, etc. is based upon the wording of the policies. On the face of the policies is written:
"Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to: Fox Arrington and Mrs. Jo Drake Arrington, Gulfport, Mississippi."
Pursuant to this provision a "loss payable clause" form was issued showing the Arringtons as loss payees "as interest may appear." Later, this "loss payable clause" was amended to include Hancock Bank and the St. Louis Terminal Field Warehouse Company, "as interest may appear". On another page of the policy there is a provision under the heading "Mortgagee Interest and Obligations" that "if loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation."
Under the provisions of these policies the terms "mortgagee clause" and "loss payable clause" are ambiguous; therefore, they must be construed against the insurer. The appellees should be construed as mortgagees under the terms of the policies, and, therefore, they were entitled to a ten days' written notice of cancellation.
This in no way conflicts with the result reached above, applying Section 5695, Mississippi Code 1942 Annotated (1956) to the buildings under the policies, but rather the wording of the policies supports the result since the policies call for a ten days' written notice of cancellation to mortgagees, whether they be mortgagees of the buildings or mortgagees of the equipment and materials. In effect, the liability of the insurance companies for the loss of the buildings rests upon Section 5695, supra, and the wording of the policies, while the liability for the loss of the equipment and materials, etc. rests upon the language of the policies themselves.
Since the appellees had no notice of the cancellation, their rights under the mortgage clause or loss payable clause were not impaired by the actions of the insured and insurer. Tarleton v. De Veuve, 113 F.2d 290, 132 A.L.R. 343, Cert. Den. 312 U.S. 691, 61 S.Ct. 710, 85 L.Ed. 1127 (1940); 6 Appleman Insurance Law and Practice, § 4182, p. 712.
The insurance companies' conten-that the plaintiffs-appellees could not testify to a value in excess of that stated in their proof of loss is not well taken for several reasons: (1) The policies, themselves, require the mortgagee to render proof of loss only upon notice of failure of the insured to do so; (2) Mississippi Code 1942 Annotated, Section 5697, requires the insurance companies to furnish proof of loss forms. The insurance companies may not raise the defense of no proof of loss when proper forms are not furnished; and (3) The denial of liability by the insurance companies on other grounds waives the filing of proof of loss (Home Insurance Co. of New York v. Gibson, 72 Miss. 58, 17 So. 13 (1894); McPike v. Western Assurance Co., *657 61 Miss. 37 (1883); Liverpool L. & G. Insurance Co. v. Sorsby, 60 Miss. 302 (1882); 5A Appleman Insurance Law and Practice, § 3631, p. 680).
Finally  the appellant insists that an instruction given the plaintiffs, Arringtons, was erroneous in that it left the jury completely free to calculate, without any reasonable guide, the amount of interest due, and that the instruction is confusing and misleading. We have read and reread this instruction, because it is long and involved, but, after careful consideration, we cannot say that it is erroneous. Moreover, if it were erroneous, we do not believe this case should be reversed because of the giving of this instruction.
The note, the facts with reference to the accounts receivable, and the sale, including the various dates, were all fairly presented to the jury. The instruction permits the jury to allow the plaintiffs, Arringtons, the amount of the unpaid balance due upon the purchase money note plus 7% interest thereon, also 10% attorney's fee on the principal and interest due on the note. The testimony clearly sets out the amounts claimed, together with the credits allowed.
The contention that the accounts receivable were of more value than the credit allowed by the plaintiff, Fox Arrington, was a question of fact for the jury and, under the circumstances in this case, we cannot say that the verdict of the jury was erroneous.
We believe that there was substantial evidence to support the verdict of the jury. Therefore, the judgment of the trial court is hereby affirmed.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.