ÆTNA INSURANCE COMPANY OF HARTFORD v. WILLIAM N. RENNO.

[46 South. 947.]

INSURANCE. *Fire policy. Taken by unauthorized person. Owner's knowledge or consent necessary. Ratification. Too late after fire.*

An unauthorized person cannot insure the property of another against loss by fire; and after the property has burned, the owner cannot ratify a policy previously obtained without his knowledge or consent.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Renno, appellee, was complainant in the court below; the insurance company, appellant, and the Mississippi Home Insurance Company, were defendants there. From a decree largely in complainant's favor against the Ætna Insurance Company, appellant, that company appealed to the supreme court, and Renno, appellee, prosecuted a cross-appeal.

October 29, 1906, the Mississippi Home Insurance Company, of Vicksburg, Miss., through its agents at Jackson, Miss., the Lake-Lott Insurance Agency, issued its policy of insurance in the sum of $1,575 to appellee, Renno; the policy covering a storehouse, $375, and stock of merchandise, $1,200. This policy was mailed by the Lake-Lott Agency to its sub-agent, Harvey at Florence, Miss., for delivery to the assured, and delivery was promptly made. October 30, the Mississippi Home Insur-

ance Company telephoned its Jackson agents, to cancel said policy, and the Lake-Lott Agency telephoned Harvey, their sub-agent, to cancel the policy, advising him they would try and re-write the risk in another company, but they did not notify Renno of the cancellation. November 2, the Lake-Lott Agency applied to Hood & Co., of Jackson, agents of the appellant, the Ætna Insurance Company, to accept the Renno risk and issue a policy thereon. This was agreed to by Hood & Co., and the Ætna policy delivered to Lake-Lott Agency, and forwarded by them to Harvey for delivery. Harvey did not promptly deliver the policy to Renno, but retained possession of the same. November 12, 1906, the property was destroyed by fire. At the time of the fire Renno had in his possession the policy of the Mississippi Home Insurance Company and had never been notified of any effort to cancel it, or that the Ætna policy had been issued. Shortly after the fire Renno came to Florence on his way to Jackson to see about his insurance, and there for the first time learned from Harvey that the Mississippi Home Company had instructed Lake-Lott Agency to cancel its policy and that the Ætna policy had been written. Upon Harvey's request, Renno, after the fire delivered to him the Mississippi Home policy and took possession of the Ætna policy, being advised by Harvey that he was fully protected by the latter policy. Thereupon Renno paid to Harvey the sum of $30, directing that it be applied in payment of the premium of the Ætna policy, and took Harvey's receipt for the same; the receipt setting forth that it was paid as premium on the Ætna policy. The Lake-Lott Insurance agency had a running account with Renno for insurance, and had charged the premium on the Ætna policy to him, and credited him with such payments as he had made upon accounts, and when the $30 was received from Harvey it was credited to Renno's account. The Ætna Insurance Company, not being paid in cash, had, through Hood & Co., charged the premium on its books to Renno, but looked to the Lake-Lott Agency for the payment of the premium, according to the general cus-

tom in the insurance brokerage business, when one agent transacted business through another.   December 22, 1906, Hood & Co., agents of the Ætna Insurance Company, forwarded to Renno blank proofs of loss to be filled out by him.   January 3, 1907, Renno being informed by the Mississippi Home Insurance Company that it denied liability upon its policy, because, as was claimed, the same had been canceled, and that the Ætna Company would probably deny liability, tendered to the Lake-Lott Agency the premium upon the policy issued by the Mississippi Home Company and paid them the balance due upon their running account for insurance, which included the premium on the Ætna policy, and on the same day tendered Hood & Co. the full amount of the premium called for by the policy of the Ætna Company, which was refused by Hood & Co., and Renno then tendered proof of loss, which was accepted by Hood & Co.; the Ætna never having, to that date, denied liability.

Neither company having paid Renno the amount due him, he began suit in the chancery court against both companies to recover against whichever one of them was liable; the bill averring that said companies had a common agency, authorized to represent both companies.

The chancery court rendered a decree for complainant, Renno, for the amount of loss upon his stock of goods against the Ætna Company, but denied relief as to the insurance on his store building, the fee-simple title to the building having been shown not to be in Renno, and dismissed the bill as to the Mississippi Home Company.

The Mississippi Home Company denied liability because it had ordered its policy cancelled, and, as it claimed, the insurance had actually been written in the Ætna and the Ætna had charged the premium and sent its policy for delivery to Renno, and for several weeks after the fire had not denied liability, while, on the other hand, immediately after the fire, Renno, being advised that the Mississippi Home policy had been cancelled, surrendered it and accepted the Ætna policy, and that, therefore, the parties acquiesced in the cancellation.

The Ætna Company denied that there was a common agency representing the two companies, and averred that when Lake-Lott Agency, representatives of the Home Insurance Company, applied to Hood & Co., agents of the Ætna, for insurance on complainant's property, neither the Ætna Company nor its agents were advised that a policy had been issued by the Home, or that said policy had not been cancelled. It showed that, among other provisions in its policy was one expressly stipulating that insurance on the risk should not exceed $1,700, including its policy, and that the policy would be void, if more than $1,700 of insurance should be taken out; and it also provided that the insurance should be void if fee-simple title to the building was not in the assured, and that by reason of the outstanding policy in the Home Company, which it claimed had not been cancelled, the Ætna policy was void, since the stipulated amount of insurance allowed had been exceeded.

*McLaurin, Armistead & Brien and Tim E. Cooper,* for appellant and cross-appellee.

The contention of the Ætna company is, that its policy never attached; that at the time the Ætna policy was delivered to Lake-Lott Agency and at the time of the fire, the policy in the Home Insurance Company was a subsisting, valid, uncancelled policy, the amount of which, added to the amount of the Ætna policy, exceeded the amount of insurance allowed, by reason of which, under the stipulation of the Ætna policy it became void.

The proposition for which the Home Insurance Company contends, is that its policy had been cancelled before the issuance of the Ætna policy; that the five days notice required to be given before its cancellation could be affected, was a stipulation in favor of Renno, the assured, and that Renno by surrendering the policy after the fire as a cancelled policy, had ratified its cancellation, and that the ratification by Renno took relation back to the date of the attempted cancellation.

Before coming to a consideration of the question thus pre-

sented upon the authorities generally, we will take up the two cases upon which the Home Insurance Company rely and one of which controlled the chancellor in reaching his conclusion. We concede, of course, the controlling effect of the decisions of our own court if they are applicable to the facts of this case. However uniform the decisions of the other courts may be to the contrary, those of our own state must control if applicable and adhered to. We shall attempt to show that the two cases in this state relied on have no sort of application to the case now before the court. Counsel for the Home Insurance Company invoked the decision in the case of *Western Assurance Company v. Ferrell*, 92 Miss. 103; 40 South. 8. In that case the policy was in the sum of $800 and the clause permitting other insurance was as follows:—"$800 total concurrent insurance permitted, including this policy." The court in that case, held under its particular facts and circumstances that this clause should be read as permitting $800 total concurrent insurance excluding the policy. Counsel's contention is that this decision of the court has given a legal construction to such a clause in whatever policy it may be used. That it means always an allowance of the specified amount of concurrent insurance allowed, excluding the amount allowed by the policy containing the clause. We do not so construe or understand the opinion in the *Ferrell case*. It is true the court there held that a clause permitting $800 total concurrent insurance including that of the policy, meant that total insurance of $800 excluding that of the policy was permitted; but this construction was adopted by the court to prevent the clause as written from being rendered totally meaningless.

The case which controlled the decision of the chancellor was that of *Southern Insurance Co. v. Hannah*, 37 South. 506. The opinion in that case is exceedingly brief. The court simply saying that it thought the testimony of the insurance agent conclusive of the liability of the appellant under the authorities. The court then cited *Dibble v. The Insurance Co.*, 70 Mich, 1;

14 Am. St. Rep. 470 and *Insurance Co. v. Dobbins,* 81 Miss.
623, 33 South. 504.   In the present case we had invoked what
we thought was a well settled rule of law; that ratification could
only be predicated of an act done by one acting or professing to
act for another; and another principle, that ratification was in-
effectual as against the supervening rights of third persons
arising from facts existing after the occurrence sought to be
ratified and before the ratification.   But the chancellor thought
that this case was authority for the proposition that in this state,
whatever might be the authorities elsewhere, one could ratify an
act done, not in his favor or for him, but against him, and that
such ratification had the effect of destroying any supervening
rights.   The case of *Insurance Co. v. Dobbins,* 81 Miss. 623, 33
South. 504, of course stands only upon the rule of estoppel and
was manifestly cited by the court in the *Hannah case* because
the testimony of the agents show that the defendant company,
with full knowledge of all the facts, had accepted the premium
paid by Hannah and had not offered to return it until after the
suit had been instituted.   The chancellor, however, thought that
while the *Dobbins case* might have been cited for that proposi-
tion, the case of *Dibble v. Insurance Co.,* was authority for the
proposition that the assured, who had not been notified of the
cancellation could, after the loss, by ratification give effect to
such cancellation from the date it was attempted, and that such
ratification would cut out the supervening rights of third per-
sons.   It is to be here noted that neither in the case of *Dibble
v. Northern Insurance Company* nor in that of *Insurance Co. v.
Hannah,* did the policy sued on, contain any provision that other
insurance should avoid that policy.   No such defense was
hinted at in either case.   In the *Hannah case,* the only plea
was *non est factum* and the general issue.   In the *Dibble case*
the only contention was that the policy of the defendant com-
pany had never been issued and delivered.   There is not one
word in either of these decisions suggesting its applicability to
the defense now interposed.

We invite the special attention of the court to the case of *Clark v. Insurance Co.,* 35 L. R. A. 276. That case and the authorities cited in it, together with the case of *Quong Tue Sing v. Assurance Company,* 10 L. R. A. 144, and the authorities cited in the notes thereto, are all we care to cite upon the proposition that the right of cancellation reserved to an insurance company upon notice to the assured cannot be exercised until the notice is given, and that notice to an agent authorized to procure insurance is not sufficient, but such notice must be given to the assured. We could multiply authorities upon this proposition, but to do so would needlessly burden the court in the examination of the question.

The act done by the Lake-Lott Agency in the effort to cancel, was done by them as the agent of the Home Insurance Company and for the benefit of that company; and was not an act done or professed to be done as the agents of Renno. For this reason the thing done was not susceptible of ratification; that ratification presupposed the act was one done or professed to be done for the party whose ratification was relied on. We, of course, recognize that an estoppel may arise against one who accepts or recognizes an act done by another although the relation of principal and agent, either real or professed, did not exist between the parties. But when we speak of ratification which takes relation back to the time of the act done, there is necessarily implied that when the act was done it was professedly done for the party who ratified.

A policy of insurance is certainly a contract, and it is equally certain that to create a contract, there must be two parties to it. There never were two parties who consented to this contract before the loss occurred. The agents of the Ætna Insurance Company supposed that it would be transmitted and delivered to Renno and we concede if this had been done and Renno had received it and given his assent to it, the Ætna would have been bound. It is true that Hood & Co., were not advised that this policy was to be substituted for that in the Home Insurance

·Company, but that was what was intended to be done by Lake-
.Lott Agency, the only other people who had any connection with
it. They did not carry out this contemplated purpose. It was
interrupted by the negligence of their own representatives.
The result was that the policy was never accepted by Renno and
he never became a party to it so it remained a mere unaccepted
proposition. *Stebbins v. Insurance Co.,* 60 N. H. 65; *Massoit
.Steam Mills Co. v. Western Assurance Co.,* 125 Mass. 110.
*Wolson v. New Hampshire Insurance Co.,* 140 Mass. 210, *Mu-
tual Life Insurance Co. v. Young,* 5 Wallace 107; *Piedmont
.Insurance Co. v. Ewing,* 92 U. S. 377; *Grace v. Insurance Co.,*
109 U. S. 278.

*J. B. Stirling* and *F. M. West* for appellee and cross-appel-
lant.

The Ætna Insurance Company attempts to escape liability
upon the theory that there was no meeting of the minds between
Renno and that company before the fire, while the property was
existent, which was attempted to be insured, and this, in the
face of the admission of their own agent that property is consid-
·ered insured by the agency and by the custom of other agencies,
and by the Ætna Insurance Company, from the date the insur-
ance is written, whether the insurance policy be immediately
delivered or not; that the companies even write "covered" or
"bound". on their books, or rather the books of the agency, and
·this is sufficient by the custom of the business to protect the in-
sured, and that he considers his companies bound from the time
he writes a policy without regard to when the delivery is made.

In the instant case the policy of the Ætna had been written
and sent out through the Lake-Lott Agency for delivery before
the fire occurred, and at the time of the fire was in the hands of
Harvey, whose testimony shows he solicited insurance, delivered
policies, collected premiums, and issued insurance.

We do not think this is an open question in Mississippi, for,
·this court decided this contention adversely to the insurance

company in the case of *Southern Insurance Co. v. Hannah,* 37 South. 506, on almost identically similar facts to those involved in this record.

We cannot agree with the distinguished solicitors for the Ætna Insurance Company that *Westen Assurance Co. v. Ferrell,* 92 Miss. 103, 40 South. 8, is not a parallel case with the case now before the court, and that if Renno had possessed a stock of goods at the time of the fire in excess of $1,500 and the court should hold that the policy of the Home Insurance Company was not cancelled and that Renno could not have recovered against the Ætna Insurance Company because of its concurrent insurance clause.

The clause in the instant case is exactly the same as that in the case of *Western Assurance Co. v. Ferrell, supra,* and the court having held that the words are plain and unambiguous, the same meaning must be given to them in every case.

The cancellation by the Mississippi Home Insurance Company's policy was effected as to all parties upon the day it was made, November 1st, 1906, except Renno, who could have disregarded the cancellation for want of notice, but when he ratified the cancellation, did not complain of want of notice, and ratified the issuance to him of another policy two days after the cancellation of the first policy that his ratification was effective as of the date of the first cancellation, and this seems to be but following our own supreme court.

Argued orally by *Tim E. Cooper,* for appellant and by *J. B. Stirling,* for appellee.

MAYES, J., delivered the opinion of the court.

Under the facts in this case we have no hesitancy in reaching the conclusion that the policy of insurance issued by the Ætna Insurance Company never attached to the risk. When Lake-Lott Agency procured the issuance of this policy, they were acting for themselves, without any authority from Renno, and

were in no sense his agents.    The true condition of affairs was
not known to the Ætna Insurance Company until after the de-
struction of the risk, and at that time it was too late for Renno
to ratify the unauthorized act of Lake-Lott Agency, so as to
prejudice · intervening rights and create liability under the
policy, when there was in existence nothing on which that lia-
bility could attach.    The case of *Johnson v. North British &
Mercantile Insurance Company*, 66 Ohio St. 6, 63 N. E. 610, is
directly in point, and in no way conflicts with any case hereto-
fore decided by this court.    Of course, the Home Insurance
policy was a valid, subsisting insurance at the time of the fire,
and that insurance company is liable.

*Reversed and remanded.*