CONNECTICUT FIRE INS. Co. *v.* HARRISON *et al.*

[Division A.   May 13, 1935.]

[161 So. 459.   No. 31689.]

Stovall & Stovall, of Okolona, for appellant.

**W. C. Sweat**, of Corinth, for cross-appellant.

**Butler & Snow**, of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

This suit is a contest between two fire insurance companies as to which of them is liable to Harrison, the appellee here, for the loss by fire of a tenant house owned by the appellee, insured for five hundred dollars. The companies contesting are the Connecticut Fire Insurance Company and the United States Fire Insurance Company, the former hereafter being called the ''Connecticut'' and the latter the ''United States.''

The essential facts are: Ben E. Everett, doing business as Ben E. Everett & Co., for many years operated a fire insurance agency in the city of Corinth, Mississippi, and was the general agent of both the Connecticut and United States Companies at the time these transactions transpired. In October, 1930, the appellee Harrison applied to Everett for fire insurance to cover his residence, household goods, and a tenant house, and a policy, in the total amount of three thousand three hundred dollars, covering two thousand dollars on his dwelling, five hundred dollars on household goods, and eight hundred dollars on the tenant house, was written by Everett for the appellee. The policy was issued by Everett for the Fidelity Phœnix Fire Insurance Company for a period of three years, expiring in October, 1933. On the expiration of that policy, in October, 1933, Harrison applied to Everett for a renewal of the insurance on his property, reducing the amount thereof and insuring for one year only on account of cramped financial condition, and, at that time, Everett delivered to Harrison a policy of fire insurance, in the Fidelity Phœnix Insurance Company, for the aggregate amount of two thousand six hundred dollars, one

thousand five hundred dollars of which covered the dwelling, five hundred dollars the household goods, and six hundred dollars the tenant house in question; and Harrison paid the premium thereon. In February, 1934, Everett received instructions from the Fidelity Phœnix Insurance Company to cancel this policy, and, pursuant to this request, Everett, without first consulting Harrison, canceled this policy and executed another in the United States in the total sum of two thousand five hundred dollars, one thousand five hundred dollars of which covered the dwelling, five hundred dollars the household goods, and five hundred dollars the tenant house. Harrison was promptly notified by Everett of the cancellation of the policy in the Phœnix Insurance Company, and Everett delivered the new policy to him, Harrison surrendering the old policy without question and saying that it was "entirely satisfactory" to him. Shortly after March 13, 1934, the United States wrote Everett to reduce its liability on this insurance one-half. Everett received the letter on March 15th, and on Saturday, March 17th, Everett discovering that he had not complied with the company's instructions under date of March 13th, immediately wrote two, what is termed in insurance parlance, "binders," one of which bound the United States for one thousand two hundred fifty dollars on the dwelling, and the other bound the Connecticut for two hundred fifty dollars on the dwelling, five hundred dollars on the household goods, and five hundred dollars on the tenant house, and canceled the insurance policy previously written on February 23, 1934, on the same property. The several companies interested were on that day notified of the execution of these binders by Harrison.

About eight o'clock in the evening, Sunday, March 18, 1934, the tenant house was totally destroyed by fire. Although the binders had been written on Saturday, March 17th, Everett did not write the insurance policies, as above indicated, until the following Tuesday after the

fire, and upon driving out to Harrison to deliver them discovered that the tenant house had been burned. He said nothing about the change in the insurance policies, but asked Harrison to come to town to the office of his (Harrison's) attorney, explaining that, "We got messed up about this and want to talk to you in the presence of your attorney," which Harrison did a little later, and Everett, in the presence of appellee, delivered the policy to Harrison's attorney, who retained the old policy in the United States. Thereafter a bill was filed against both companies setting up the facts and alleging that one or both of the insurance companies were liable to the appellee for five hundred dollars, the amount of the insurance.

It is clear that Harrison only intended to carry insurance for five hundred dollars on the tenant house. The policy in the United States contained a clause which provided that the cancellation thereof could be had by five days' notice of such intention to the insured, for the purpose of allowing the insurer to cancel the insurance. No notice was given the insured, appellee, and he did not know of the cancellation until several days thereafter. Harrison left the selection of the company to the insurance agent, and expected the property to be insured for the time and in the amount he had requested.

Everett testified that it was customary for him to cancel an insurance policy without notice to the insured, and that in ninety per cent of the cases in which he had done so there was no controversy or disapproval of his action. It is not shown that Harrison knew anything about this custom, nor that he gave any specific instructions, except as above indicated.

There was no effort to prove any express authority from Harrison to the agent to cancel the policy. That there was implied authority from Harrison to its agent so to do is the contention of the United States, and, further, that from the facts detailed the agent impliedly

had the authority to act for the insured in keeping his property insured, and to cancel this policy.

The Connecticut asserts the opposite to be true; and that there was no authority, either expressed or implied, to cancel the policy in the United States; and that being true, the effort to insure Harrison's property never became effective as to that company.

The authority of Everett, as a general agent, to bind either of the companies is unquestionable. The court below decreed that the Connecticut was liable to Harrison, dismissing the bill as to the United States, and rendered a decree in favor of Harrison against the Connecticut for five hundred ten dollars. The Connecticut appeals to this court. Harrison assigns error here on cross-appeal.

It is here conceded that either the Connecticut or the United States is liable to Harrison for his loss by fire. If the policy issued by the United States was canceled by waiver on the part of Harrison, the Connecticut became liable; if not so canceled, the United States was and is liable on its policy in the possession of Harrison at the time of his loss by fire.

The only question under the facts of this case presented here is, whether or not Everett, as the insurance agent, was clothed with implied authority by the insured to cancel the policy of insurance which he held.

The fact that the Connecticut's binder had not been delivered to it would not relieve that company of liability if the policy carried by the United States had been canceled. See Scottish Union & Nat. Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9.

The provision in an insurance policy requiring five days' notice to the insured in order to cancel the policy is one inserted therein for the benefit of the insured, and the notice required in the contract must be given to effect a cancellation, unless that notice is waived by the insured. See Ætna Ins. Co. v. Renno, 93 Miss. 594, 46

So. 947. "As a general rule, an agency to procure insurance does not necessarily confer the power to cancel insurance. . . . 'Such an agency terminates when the insurance is procured and the policy delivered to the principal [insured].'" Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653, 654.

There is no dispute in the record in this case. The only possible evidence upon which a waiver of notice of cancellation of the fire insurance is the evidence that a former policy was canceled February 23, 1934, without notice, and when a new policy of insurance was delivered by the agent to Harrison, he was entirely satisfied therewith. The case at bar falls far short of the evidence in the case of Ætna Insurance Co. v. Renno, 96 Miss. 172, 50 So. 563. There the insured said to the agent: "If you insure me, I want you to insure me; and when this expires, I want you to reinsure me;" and the agent replied: "We [the insurance agents] will keep you insured. . . . Your place will be insured, and we will keep it insured. You need not be uneasy; just leave it to us." Also the court held in that case that in order to effectuate the oral contract between the insured and the agent, implied authority to the agent was granted to cancel the policy, and in lieu thereof issue a new policy. There was no express authority and no meeting of the minds as to an implied authority in the case at bar; nor was there a course of dealings between the parties which established implied authority.

It is quite clear from the facts of this case that the insured did not expressly waive the five-day notice, and there is no substantial evidence upon which to base an implied waiver on his part; consequently, the United States Fire Insurance Company remained liable on its contract and the Connecticut Fire Insurance Company never became liable. The case is controlled by Ætna Fire Ins. Co. v. Renno, 93 Miss. 594, 46 So. 947.

We think the decree of the court below is erroneous,

and should be against the United States Fire Insurance Company for five hundred ten dollars, with six per cent interest thereon from the date of the decree below.

Reversed, and decree here for cross-appellant against the United States Fire Insurance Company, and bill dismissed as to appellant.