**NEW ENGLAND INSURANCE COMPANY**

v.

**H. B. CUMMINGS.**

Civ. A. No. 735.

United States District Court
S. D. Mississippi,
Vicksburg Division.

Aug. 30, 1958.

554

James D. Thames, Jr., Vicksburg, Miss., Watkins & Eager, Jackson, Miss., for plaintiff.

T. H. Campbell and John B. Loomer, Yazoo City, Miss., Oscar P. La Barre and Landman Teller, Vicksburg, Miss., for defendant.

MIZE, District Judge.

This matter is now before the court upon a motion of the plaintiff and cross-defendant to grant a new trial or to set aside the verdict of the jury and render judgment for the plaintiff and cross-defendant. The suit was filed by New England Insurance Company against the defendant, H. B. Cummings, for declaratory judgment. Plaintiff alleged in its suit for a declaratory judgment that the defendant was claiming a loss growing out of a fire in Yazoo City, Mississippi, upon which he was contending that the plaintiff had issued an insurance policy covering the Tenderloin Grill in Yazoo City. The defendant, H. B. Cummings, answered the complaint and admitted that he was contending and claiming that the Insurance Company was liable to him under a binder contract that was issued by the Insurance Company through its General Agent, Andrews, in Vicksburg, Mississippi, and made his answer a cross-complaint, demanding judgment of the Insurance Company in the sum of $9,000. The Insurance Company denied the material allegations of the cross-complaint, but admitted that the document purported to have been issued by Andrews, the General Agent of the Company, was signed by Andrews. However, they denied the validity of the instrument in several respects and contended that the binder was no more than an agreement to issue a policy at a future date, which was not done before the occurrence of the fire.

The purported binder was issued by and through the agency of Andrews & Hossley, who were General Agents for the plaintiff insurance company. The plaintiff made a motion for a summary judgment, setting up all of its contentions, and after having heard the motion for summary judgment, the court reached the conclusion that probably there could be an issue of fact to be drawn from the inference of the testimony and held that the binder was a valid agreement insuring the property. Thereafter the case came on for trial before the court and a jury and the court submitted the case to the jury, which returned a verdict for the defendant and cross-complainant Cummings in the sum of $9,000. Within the time permitted the plaintiff and cross-defendant made a motion for judgment notwithstanding the verdict, or if that be not granted, then a new trial.

After mature consideration, I am of the opinion that the motion for judgment notwithstanding the verdict must be sustained and judgment entered for the plaintiff, New England Insurance Company, dismissing the cross claim of

the defendant and cross-plaintiff, H. B. Cummings.

It is a close case on the facts and many points are urged by the plaintiff why the defendant was not entitled to recover. It first contends there was no contract of insurance that was binding upon the Company under the binder agreement that was issued by their General Agent Andrews. This binder was issued in the early part of September, 1955 and undertook, by the General Agents, to bind the Insurance Company, to issue a policy in the sum of $9,000 upon the contents of the Tenderloin Grill in Yazoo City. The fire occurred on September 29, 1955, approximately two or three weeks after the issuance of the binder. The Insurance Company secondly contends that the binder, if valid, was rendered null and void because Cummings, after the loss, wilfully concealed material facts from the insurer concerning the insurance and the subject matter thereof. The third contention is that even though the policy might have been a valid binder, yet the Company would not be liable for any loss occurring because during the period of its existence the insured knowingly increased materially the hazard by means which were within his control and knowledge and that, therefore, the Company is not liable for the loss. Its fourth contention is that Cummings did not sustain the burden of proof and show with sufficient certainty what equipment was in the building at the time of the loss, and further contends that the insured wilfully concealed material facts and circumstances concerning the subject matter of the issuance of the policy, failed to inform the general agents of the true facts concerning the risk to be insured, and lastly, as one of its major points, contends that the insured violated the Iron Safe Clause.

I shall not discuss in detail all of the points urged, other than Point One, the validity of the insurance, and Point Three, that the hazard was increased during the existence of the binder by the insured, Cummings, by means which were within his control and knowledge. It is for this latter reason that I sustain the motion and grant judgment for the plaintiff, Insurance Company, but first I will discuss the validity of the binder.

Before going into a general discussion of the validity of the binder it will be necessary to state just a few facts as to the background of the parties. The defendant, H. B. Cummings, had for many years operated a restaurant in the city of Vicksburg, Mississippi and most of his insurance had been placed through Andrews & Hossley, General Agents, who were agents of the plaintiff in this case, as well as for several other insurance companies. They had full power to issue and sign valid insurance policies for any of the companies they represented. Through custom these General Agents would write the insurance for Cummings and would bill him for premiums from time to time, which he would pay, or in some instances they assisted him in financing them through the Bank. Yazoo City is situated Northeast of Vicksburg and located in a different county. In the early part of 1955 Cummings decided to operate the Tenderloin Grill, a restaurant and night club. He opened it up and did operate for some time, and in the place sold intoxicating liquors, contrary to the laws of Mississippi, and operated gambling machines, slot machines. As long as he was permitted to operate these he made money, but for some reason or other sometime shortly before September he had to suspend such operations and began to lose money rather rapidly. He had bought the night club contents from the Price estate, including all of the equipment and stock of merchandise, and in addition thereto purchased a large amount of new equipment from Passman Equipment Company. This equipment from the Passman Equipment Company was insured in another and different Insurance Company. Cummings and these General Agents were good friends and had done business together for several years. In the early part of September he was changing his

insurance and approached Andrews with reference to getting coverage for $21,000 on all the contents until Passman could accord him insurance on the declining balance owed Passman for the new equipment. However, this insurance was not consummated. Later Cummings did secure a $3,000 policy with another company on the fixtures, and in the early part of September, the date is not exact, he secured the binder, the validity of which is now in question.

Now, going to the validity of the binder, this binder was not issued on a form prescribed by the state of Mississippi, but was issued on one of the forms of the New England Insurance Company and was headed "Memorandum of Insurance, New England Insurance Company of Springfield, Massachusetts." The General Agents of the defendant Company, with a typewriter, wrote above this the words: "Insurance Binder". These words are important for the reason that at the conclusion of the purported binder and as a part of the regular printed form, it had these words: "Is furnished simply as a memorandum of said policy as it stands at the date of issue thereof and is given as a matter of information only and confers no rights upon the holder and imposes no liability upon the Company." The typewritten "Insurance Binder" controls over the printed form if there is sufficient language to show there is a conflict in the language used and if there is sufficient language imposing obligation. In the body of the binder is this language: "In consideration of the provisions and stipulations therein or added thereto and of the premium above specified, this company for the term of one year at noon standard time, at location of property involved, to an amount not exceeding the amount above specified, has insured Mr. Cummings upon the contents of the one-story frame and plaster building, approved roof, Highway 49W, Yazoo City, Mississippi." By virtue of this language it clearly was the intent, as demonstrated by the language of the document itself, of the Company to insure Cummings for the period of one year upon the contents of the building therein specified and in the amount of $9,000, the document having stipulated that the policy would be for $9,000.

There was much oral testimony in the case which I think was incompetent. It was testified by the Agent Andrews himself that it was his intent to cover the contents of the building at the time of the issuance of the binder and by the binder; that he thought it was covered and told Cummings he was covered from that date. Under the law of Mississippi a contract of fire insurance must be in writing and all of the oral testimony, therefore, was inadmissible, but the document itself clearly covers the type of policy he was to get and was to be issued. It was sufficiently certain in its terms. True, the amount of the premium had not been ascertained, but it had been discussed. The Mississippi Rating Bureau determines the amount of the premium upon property in this state, and the agents had written to the Rating Bureau for the purpose of ascertaining the amount of the premium. Under the law this is sufficient. Anything is certain which can be made certain from other authorities empowered to fix the fact. See Words and Phrases under the heading "Certainty" and "Certain". Therefore, the premium was fixed, the amount of the insurance was stated, the period of time was stated, that the Company had insured Mr. Cummings was stated, the description of the property was sufficiently stated—it was a one-story frame and plaster building, approved roof, on Highway 49W, Yazoo City, Mississippi, and known as the Tenderloin Grill. A binder or temporary insurance is not required to have all the detail and formality that an insurance policy has. Companies writing binders do so with a knowledge of what the law is and when the binder agreement shows a meeting of the minds, a description of the property, a consideration and the amount of the premium, the amount of the insurance and the location of the property,

then that is sufficient to bind the Company to issue a policy in its usual and customary form or in the form provided by the state, when that form is provided. See 44 C.J.S. Insurance § 227, pp. 941 et seq. I think it is clear that the binder was a valid agreement and obligated the Company to bear the loss, unless it was voided by some subsequent act of the insured. By the terms of Sec. 5706, Code of 1942, an agent with the authority to write and deliver policies is a general agent and may waive any provision of the policy. Camden Fire Insurance Association v. Koch, 216 Miss. 576, 63 So.2d 103. It is not necessary that the premium on the policy be paid or that the policy be actually delivered to the insured before the contract becomes effective. Scottish Union & National Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9. The fact that the binder issued by the General Agents had not been delivered to Cummings does not prevent it from becoming effective. Connecticut Fire Ins. Co. v. Harrison, 173 Miss. 84, 161 So. 459.

■ The fire that destroyed the property occurred on September 29, 1955, some two or three weeks after the issuance of the binder. Under Point Three the plaintiff urges that the conduct of the insured increased the hazard materially and therefore voided the policy during the time of the increased hazard and the time lasted until the fire occurred. It was the duty and obligation of the insured not to increase substantially the risk covered by the policy. This duty the defendant, Cummings, not only failed to perform, but on the contrary, he, himself, increased the hazard materially and within about nine days after this increase by him, the loss occurred. When the policy was issued the insured property was being used and occupied as the Tenderloin Grill and managed by an employee of the insured named Thrash. Shortly after the issuance of the policy the insured began to lose money heavily and to drink heavily. He had been losing money before that, but his losses were increasing and the prospects for improvement were dim. According to his own testimony, he had been drinking heavily for about two weeks and finally decided to close the place, and did close it some two weeks before the fire occurred. He fired the manager, Thrash, and instructed Thrash to lock the place up, which Thrash did, and kept the keys. He left no one in attendance at the place and did not visit the place himself at all after that until after the fire occurred. There was a defective gas heater in the building and this defective gas heater was left burning in this unused place of business, with no one to watch it. The insured, Cummings, knew that the gas heater was defective, being one that was changed from a butane gas system to natural gas system, and knew that they had been having trouble with it. He knew that the place had been locked up with the gas left on. When he did this he was not sure whether he would open again or not, but thought probably he would and that the closing was only temporary. This was a dangerous situation to have left the place in, with no one to watch it or guard it, and was such a change as to substantially increase the risk, and it was, therefore, the duty of the insured to correct that condition or else his policy would be suspended during the time of such increased hazard. An insured must take steps to abate an increased hazard, whether it is created by him or another, if it is known to him. See Goldman v. Piedmont Fire Ins. Co., 3 Cir., 198 F.2d 712.

■ In 45 C.J.S. Insurance § 559, p. 313, it is said: "In determining what constitutes an increase of risk or hazard within the condition avoiding the policy therefor, it has been stated generally that any continuing condition which makes the occurrence of fire more or less likely affects the hazard, and that an increase of hazard occurs whenever the chance of loss is increased through some new use or physical change in the property." After the issuance of the policy in the present case, the closing of the Tenderloin Grill under the circumstances

heretofore stated created a physical change in the property, which made it much more likely that a fire would occur. See also Western Assurance Co. v. McPike, 62 Miss. 740. In that case the insured house was virtually abandoned by the insured and his tenant for more than thirty days during the period of the insurance, and while so abandoned was converted into a retail liquor saloon by someone without authority who paid no rent and had no family. The Supreme Court of Mississippi held as a matter of law that there was such a change in the property that it amounted to an increased hazard and directed judgment for the Company.

■ In the present case when the application for insurance was made by Cummings to the Agent of the Company the Tenderloin Grill was a going concern and was kept open under the management of Thrash. After the binder was issued this condition changed, as heretofore stated, and the condition after the change was much more susceptible to fire than it was before it was closed. Ordinarily these matters are for the jury to determine, but in the present case there is no dispute about those facts. The plaintiff, himself, testified to them and it thereupon became and is a question of law for the court. It being apparent that there was a material change which increased the hazard, the plaintiff's request for a directed verdict should have been granted, and the cross complaint of the cross-plaintiff should be dismissed.

■ The issues made up as to whether or not the cross-plaintiff concealed material facts before the issuance of the binder and whether or not he concealed material facts after the loss when he was examined under oath were issues for the jury. It will not be necessary to set out the evidence on these issues. If the cross plaintiff had not increased the risk of hazard during the pendency of the binder, in my judgment the verdict of the jury would stand up on the other issues. It was for the jury to determine on the evidence on those issues whether Cummings concealed anything on his application or whether he made any false representations, and it was for the jury to determine under the testimony whether or not on his examination under oath after the loss he concealed any facts or refused to answer any questions which were material to the investigation being made by the Company of the loss. See Lititz Mutual Ins. Co. v. Miller, 210 Miss. 548, 50 So.2d 221; 5 Appleman, Insurance Law and Practice, Sec. 3587, p. 763; Firemen's Ins. Co. of Newark, New Jersey v. Smith, 8 Cir., 180 F.2d 371.

Another contention of the Company was that the insured had violated the Iron Safe Clause. This issue was submitted to the jury and by its verdict it found that there was no violation of the Iron Safe Clause. As a matter of law it is doubtful whether this issue should have been submitted to the jury, as the proof was insufficient to show that the Iron Safe Clause of the policy had been violated.

For the reasons hereinbefore stated, the motion of plaintiff, Insurance Company, for a directed verdict should have been given, and the motion now being considered, to set aside the verdict of the jury and to grant judgment for the Insurance Company, will be sustained. The motion of the Insurance Company for a new trial will be overruled.

An order may be drawn declaring that the binder was valid and effective, but that the insured had substantially increased the risk of fire by his acts, which acts were under his control, and that the plaintiff is relieved from the payment of anything whatever on the policy; and that the cross claim of the cross-plaintiff be dismissed; and the motion for a new trial by plaintiff be denied.